IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| SCOTT A. KUMBALEK, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 130125D |
| | ) | |
| v. | ) | |
| | ) | |
| MULTNOMAH COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff appeals the 2012-13 real market value of property identified as Account R632296. A trial was held in the Oregon Tax Courtroom, Salem, Oregon on July 29, 2013. Scott Kumbalek (Kumbalek) appeared on his own behalf. Barry Dayton, Appraiser, appeared on behalf of Defendant. Jeff Brown (Brown), Residential Appeals Lead Appriser, testified on behalf of Defendant. Plaintiff's Exhibits 1, 2, 5, 6, and 7 were offered and admitted.

I.  STATEMENT OF FACTS

The subject property is a 2,768 square foot detached condominium in Portland, Multnomah County, Oregon. (Ptf's Ex 2.) Plaintiff testified that the subject property "resembl[ed] an individual home rather than a condo, despite belonging to a condo home owner's association. The unit is part of eight units that have a good view of the Oregon coastal range, though [the subject property] has a very limited view relative to other units." Plaintiff testified that the subject property was built "relatively recently, in 2009." (*See also id.*)

Plaintiff testified that five of the eight units, including the subject property, were foreclosed and subsequently sold by the bank. Plaintiff testified that the subject property was one of three units recently sold in the neighborhood, the "last to sell, and sold at the highest price." Plaintiff purchased the subject property from West Coast Bank (Bank) on May 14, 2012,

paying $475,000. (Ptf's Ex 2.) Plaintiff testified that the subject property was listed for sale for 474 days prior to his purchase. (*Id.*) Plaintiff testified that the listed price was $495,000. (*Id.*) Brown testified that the original listing price was $589,000 "one year prior to the assessment date."

The subject property's real market value on the tax roll was $526,570 and the assessed value was $383,200. (Ptf's Ex 5.) Plaintiff filed a petition to appeal the subject property's real market value to the Board of Property Tax Appeals (BOPTA), which on February 25, 2013, determined no change in the tax roll real market value. (*Id.*) Plaintiff appealed BOPTA's order to this court on March 26, 2013. (Ptf's Compl at 1.)

## II. ANALYSIS

The issue before the court is the 2012-13 real market value of Plaintiff's property. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor*, TC-MD No 020869D, WL 21263620 at \*2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1), which reads:[1] "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." The assessment date for the 2012-13 tax year was January 1, 2012. *See* ORS 308.007(2).

The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue \* \* \*." ORS 308.205(2). There are three approaches of value that must be considered, although all three may not be applicable

---

[1] All citations to the Oregon Revised Statutes (ORS) are to 2011.

in a given case. OAR 150-308.205-(A)(2)(a). The three approaches are: (1) the cost approach, (2) the sales comparison approach, and (3) the income approach. *Id.* Plaintiff did not provide evidence under any of the three approaches of value, relying primarily on his purchase price to support his 2012-13 real market value determination. When determining real market value,

> "[a] recent sale of the property in question is important in determining its market value. If the sale is a recent, voluntary, arm's-length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sales price, while certainly not conclusive, is very persuasive of the market value."

*Kem v. Dept. of Rev.* (*Kem*), 267 Or 111, 114, 514 P2d 1335 (1973); *see also Sabin v. Dept. of Rev.*, 270 Or 422, 426-27, 528 P2d 69 (1974); *Equity Land Res. v. Dept. of Rev.*, 268 Or 410, 414-15, 521 P2d 324 (1974). In considering a purchase price, the two important considerations are whether or not the sale was "recent" and whether it was "arm's-length." *See Kem*, 267 Or at 114-15. Plaintiff's purchase, which closed on May 14, 2012, was close to the January 1, 2012, assessment date, making it a fairly recent sale after the assessment date. *See Brashnyk v. Lane County Assessor (Brashnyk)*, TC-MD No 110308, WL 6182028 at *5 (Dec 12, 2011) (holding sale closing in May to be "fairly recent" after assessment date).

The next issue is whether the sale was an "arm's-length" transaction. At the time of Plaintiff's purchase, the subject property was a bank-owned property. This court has observed:

> "A property purchased through foreclosure may well involve an element of compulsion on the part of the seller. There are many practical reasons why the sale of a property following foreclosure by the lender might involve an atypical market condition rendering the transaction of little or no value as an indication of market value. For example, the lender may have a policy of selling such property only for the amount of the underlying debt, regardless of what the property may actually be worth, particularly if it would take a few months more to find a buyer willing to pay a higher price. If so, the sale, at best, likely represents the low end of the real market value range, and may have been well below the actual market value of the property."

*Kryl v. Lane County Assessor* (*Kryl*), TC-MD No 100192B, WL 1197444 at *2 (Mar 30, 2011).

In *Kryl*, this court gave little weight to a bank-owned property sale that occurred within a few months after the bank acquired it and after a short listing period. This court has also observed that "a sale of bank-owned property conducted with such rapidity suggests duress or compulsion on the part of the seller, leading the court to conclude such sales are not indicative of an arm's-length transaction." *Brashnyk*, TC-MD No 110308, WL 6182028 at *5. The Oregon Administrative Rules specify that "[w]hen nontypical market conditions of sale are involved in a transaction (duress, death, foreclosures, interrelated corporations or persons, etc.) the transaction will not be used in the sales comparison approach unless market-based adjustments can be made for the nontypical market condition." OAR 150-308.205-(A)(2)(c).

This court has also noted that "[t]here are narrow exceptions determined on a case-by-case basis to the holding that bank-owned property sales are not typically representative of real market value." *Brashnyk*, TC-MD No 110308, WL 6182028 at *5. Bank-owned property sales may be considered as comparable sales for the purpose of establishing real market value "when those bank-owned property sales have been exposed to the open market and meet the nominal standards for an acceptable comparable sale." *Id.* at *6 (internal quotation marks omitted). If a property has been marketed for a sufficiently long period of time and properly exposed to the market, the implication of distress on the part of the seller may be removed and a bank sale may be found to be arm's-length. *Ward v Dept. of Revenue*, 293 Or 506, 508 650 P2d 923 (1982); *see Brashnyk*, WL 6182028 at *6 (five year listing period, including four years prior to bank's acquisition, was persuasive evidence that purchase price reflected market at time of sale).

As the party seeking affirmative relief, Plaintiff bears the burden of proof and must establish his case by a preponderance of the evidence. *See* ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). Plaintiff must present the greater weight of evidence to

support his requested real market value reduction. This court has stated that "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002). "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD No 110300D, WL 879285 (March 13, 2012).

Plaintiff's only evidence submitted in support of his purchase price was a one page document, including the subject property's picture, general information, residence information, remarks, approximate room sizes and descriptions, features and utilities, financial, broker/agent data, and comparable information. (Ptf's Ex 2.) Plaintiff highlighted comparable information, stating that the subject property had been listed on February 1, 2012, at the offering price of $495,000. (*See id*.) Plaintiff offered to purchase the subject property on March 7, 2012, for $475,000.

Defendant testified that that the subject property was listed for sale approximately one year prior to the January 1, 2012, assessment date at a price of $589,000. No evidence was submitted showing an initial listing price of $589,000 and the date the subject property was originally listed for sale. Plaintiff submitted no evidence documenting the incremental price reductions from $589,000 to $475,000.

The only evidence of Plaintiff's purchase price before the court is a listing dated February 1, 2012, prior to Plaintiff's purchase. (Ptf's Ex 2.) A period of approximately 35 days lapsed between the initial offering price and Plaintiff's offer. There is no evidence before the court

/ / /

/ / /

showing that 35 days allows for sufficient market exposure. Plaintiff's purchase price of $475,000 is not singularly persuasive evidence in establishing the subject property's real market value.

Plaintiff offered two appraisal reports that were not admitted into evidence because the appraisers who prepared the reports were not present on trial day to testify. Plaintiff submitted no evidence of adjusted comparable properties to support his requested real market value. Even though Plaintiff testified that two other properties in his same neighborhood sold in 2012, Plaintiff submitted no evidence documenting the properties' comparability to his property or the sale of those properties.

Plaintiff's evidence in support of his requested real market value reduction is inconclusive. Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). Plaintiff has failed to carry his burden of proof.

Even though the burden of proof has not shifted to Defendant under ORS 305.427, "the court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412. Defendant submitted no evidence. Based on the evidence presented, the court cannot determine a real market value.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### III. CONCLUSION

After carefully considering the testimony and evidence presented, the court finds Plaintiff failed to meet his burden of proof to support his requested real market value as of the assessment date, January 1, 2012. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ___ day of September 2013.

 

 

JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Presiding Magistrate Jill A. Tanner on September 5, 2013. The Court filed and entered this Decision on September 5, 2013.*